UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DEBRA ASATO,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:24-cv-00336- EJY<br><br>**ORDER** |

This case comes before the Court following Plaintiff's application for disability insurance benefits on September 17, 2020 alleging the onset of disability as March 1, 2020. Administrative Record ("AR") 211-212. The Commissioner of Social Security ("Commissioner") denied the claim initially and on reconsideration. AR 121-124, 126-131. On May 27, 2022, Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). AR 140-141. The ALJ presided over the hearing on October 20, 2022, taking Plaintiff's testimony and the testimony of a vocational expert (the "VE"). AR 43-81. The ALJ issued his decision denying benefits on December 6, 2022. AR 26-42. Plaintiff requested an appeals council review on January 30, 2023, which the council denied on January 3, 2024. AR 206-209, 1-5. On that date, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). This civil action followed. The Court has jurisdiction to review the final decision of the Commissioner for substantial evidence and error of law. 42 U.S.C. § 405(g). To that end, the Court reviewed Plaintiff's Brief, the Commissioner's Brief, and Plaintiff's Reply. ECF Nos. 9, 11, 12.

**I.    STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the decision is based on correct legal standards and such findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

"When the evidence before the ALJ is subject to more than one rational interpretation, … [the Court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court "cannot affirm the decision of … [the Social Security Administration] on a ground … the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). The Court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## II. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant (now Plaintiff) carries the burden of proof at

steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098-99 (internal alterations omitted).

**B.      Summary of the ALJ's Decision**

The ALJ found Plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through September 30, 2025. AR 31. Thereafter, the ALJ used the five-step sequential evaluation process to guide his decision. 20 C.F.R. § 404.1520. At step one the ALJ agreed Plaintiff had not engaged in substantial gainful activity since March 1, 2020. AR 31.

At step two, the ALJ found Plaintiff suffered from the medically determinable severe impairment of the skeletal spine with sprain. AR 32. The ALJ also considered Plaintiff's knee complaints noting she was post-surgery, "[i]maging from late 2020 showed no abnormalities, … a subsequent MRI showed a complex tear of the lateral meniscus and arthritis, … [Plaintiff] had … arthroscopy, meniscectomy, chondroplasty, and synovectomy, …[and a]fter … surgery, she had physical therapy, during which she showed improvement and had near normal range of motion and strength." *Id*. The ALJ concluded Plaintiff's post-surgery knee condition was a "non-severe impairment." *Id*.

The ALJ stated he considered all of Plaintiff's medically determinable impairments including those that were found non-severe when preparing for a residual functional capacity (sometimes the "RFC") assessment. *Id*. In preparing for step four, the ALJ concluded the impairment did not meet or equal any "listed" impairment and assessed Plaintiff as retaining the RFC to perform the demands of sedentary work except lifting of 10 pounds occasionally and less than 10 pounds frequently; carrying 10 pounds occasionally and less than 10 pounds frequently; sitting for six hours, standing for two hours, and walking for two hours; pushing/pulling as much as Plaintiff can lift/carry; climbing ramps and stairs occasionally; balancing, stooping, kneeling, crouching, and crawling occasionally; and working at unprotected heights, with moving mechanical parts, and in vibration frequently. *Id*. At step four, the ALJ found Plaintiff could not perform past relevant work. AR 34. The ALJ noted Plaintiff was 61 years old at the time of assessment, "which is defined as an individual closely approaching retirement," has at least a high school diploma, and acquired skills from past relevant work that would allow her to perform the alternate work of data entry clerk and receptionist. AR 35. At step five, the ALJ concluded Plaintiff did not suffer from a disability between March 1, 2020, and the date of the decision. AR 36.

**C.    Plaintiff Does not Demonstrate the ALJ Erred When Considering her Knee Impairment**.

Plaintiff argues the ALJ's finding that her knee impairment was non-severe is erroneous and "[t]herefore, the sole question is whether the knee impairment [had] … a significant impact to [sic] the ability to work." ECF No. 9 at 6. Plaintiff says that even assuming she had a full recovery from her knee impairment one day after surgery, she had a "closed period of disability" from at least

4

March 1, 2020 through July 23, 2021. Citing solely to physical therapy notes, Plaintiff argues she had "diminished motor strength through at least October 22, 2021" and was not "near normal motor strength" until November 15, 2021. *Id*. Plaintiff argues this required the ALJ to consider whether she had a closed period of impairment through at least October 22, 2021.[1]

Here, despite criticizing the ALJ's discussion of impairments, Plaintiff points to no requirement that the ALJ use any specific language or make findings relating to her now claimed closed period of disability. What law the Court found is to the contrary. "Because the closed period is contained within the period of time explicitly identified by the ALJ, the ALJ implicitly denied Plaintiff's disability during the closed period. The ALJ is not required to parse his decision into a separate denial of the closed period and a denial for the entire period." *Saul v. Colvin*, Case No. CV-14-01305-PHX-JZB, 2015 WL 5693541, at *4 (D. Ariz. Sept. 29, 2015) *citing Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071-73 (9th Cir. 2010). *See also, e.g.*, *Dutkiewicz v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-163, 2015 WL 8757250, at *5 (W.D. Mich. Dec. 14, 2015) (holding that although the ALJ's decision did not contain a specific finding stating he considered a closed period of disability, the ALJ considered the record as a whole, which necessarily showed that he found the plaintiff did not demonstrate a closed period of disability); *Evers v. Astrue*, Case No. 3:12-CV-118, 2013 WL 1305627, at *12 (E.D. Tenn. Jan. 2, 2013), *report and recommendation adopted*, 2013 WL 1301777, at *5 (E.D. Tenn. Mar. 28, 2013) (finding the ALJ did not err by only implicitly addressing a closed period of disability); *Sielaff v. Comm'r of Soc. Sec.*, Case No. 1:10CV1571, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012) (finding no law exists requiring an ALJ to specifically indicate that a closed period of disability was considered and rejected).

Further, the ALJ found Plaintiff suffered from a severe impairment and considered the severe and non-severe knee impairment when fashioning Plaintiff's RFC. Plaintiff's argument nonetheless relies on the ALJ's supposed failure to consider her knee impairment as severe when posing a hypothetical to the VE who testified that a person with Plaintiff's limitations, as stated by the ALJ, who needed "an assistive device and an option to sit-stand at will could not perform any work

---

[1] The Court notes it was not until Plaintiff requested review of the ALJ's finding by this Court that a closed period of disability was asserted.

5

activities." ECF No. 9 at 8 *citing* AR 73. However, the only evidence that Plaintiff used an assistive device is her reference to a single page of the record, dated August 3, 2021, in which she reported using a walker. AR 1611. Plaintiff also testified at the October 20, 2022 hearing that she had used a wheelchair for approximately six months. AR 54. *See also* AR 33. The Court finds no record medical evidence, and none is cited by Plaintiff, supporting the need for sit-stand at-will option or the prescribed use of an assistive device for walking at any time.

The Ninth Circuit recognizes that step two of the five step sequential process employed by ALJs "is merely a threshold determination meant to screen out weak claims." *Mercado v. Berryhill*, Case No. 16-cv-4200-BLF, 2017 WL 4029222, at *5 (N.D. Cal. Sept. 13, 2017) (internal bracket and citation omitted); *Jefferson v. Berryhill*, Case No. 2:16-cv-01032-RBL, 2017 WL 510424, at *2 (W.D. Wash. Feb. 7, 2017) ("[t]he step-two inquiry, however, is a *de minimus* screening device used to dispose of groundless claims.") (internal citation omitted). This step "is not meant to identify the impairments that should be taken into account when determining the RFC" when an ALJ must consider all of a plaintiff's impairment whether severe or non-severe. *Mercado*, 2017 WL 4029222, at *5. (citation omitted). If an ALJ fails to credit a non-severe impairment when determining a plaintiff's RFC, then the failure may not be harmless. *Id*. at 6. But when the ALJ takes all impairments into account when determining the RFC, then there is no harm to Plaintiff. *Id*. (citation omitted).

The ALJ found Plaintiff could do "less than [the] full range of sedentary work" with the ability to lift 10 pounds occasionally and less than 10 pounds frequently. AR 32. Plaintiff was also limited to carrying 10 pounds occasionally and lifting less than 10 pounds frequently; sitting for 6 hours, standing for 2 hours, walking for 2 hours, and pushing and pulling as much as she could lift and carry. *Id*. Plaintiff was found to be able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl only occasionally. *Id*. This determination was made based on "all symptoms … consistent with the objective medical evidence" as well as medical opinions and prior administrative findings. *Id*. Plaintiff does not argue that the ALJ failed to consider a medical opinion and there is nothing to support the conclusion that all of the medical opinions, discussed at length at AR 33-34, were not considered by the ALJ when formulating the RFC or reaching his ultimate determination.

The Court finds Plaintiff fails to establish harmful error warranting remand based on the ALJ's decision that her knee impairment was non-severe.

**D.     The ALJ's Properly Analyzed Plaintiff's Testimony**.

When considering a plaintiff's symptom testimony the ALJ is required to engage in a two step process. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Second, if there is no evidence of malingering, the ALJ must give "'specific, clear and convincing reasons'" to reject Plaintiff's testimony about the severity of her symptoms. *Id. (internal citations omitted).* The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Nonetheless, to reject Plaintiff's testimony, the ALJ was required to provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ "must identify what testimony is not credible and what evidence undermines … [Plaintiff's] complaints." *Id*. The reasons for rejecting Plaintiff's testimony must be clear and convincing. *Id*. Here, there is no discussion of malingering in the ALJ's decision. Instead, and contrary to Plaintiff's argument that the ALJ failed to employ the proper methodology when assessing her testimony (ECF No. 9 at 10), the ALJ employed the two step process and found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, her "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms … [were] not entirely consistent with the medical evidence and other evidence in the record." AR 33.

The decision issued by the ALJ demonstrates he discussed Plaintiff's medical history in detail noting "back pain with radiculopathy to the lower extremities"; "tenderness and spasms of the spine"; "positive straight leg raises"; "disc herniation … and protrusion"; "[t]reatment [with] injections, medication, narcotic pain medication and physical therapy"; the use of an unprescribed back brace; and "lumbar fusion surgery." *Id.* The ALJ also reviewed medical opinions, including

the medical consultants, which he found persuasive because they were "supported by and consistent with the evidence" in the record. AR 34. The ALJ found the record consistent with evidence of "lumbar surgery and disc disease, but also evidence of a good recovery, good strength, the ability to perform physical therapy, and good pain management with medication." *Id*.

Despite this evidence, Plaintiff testified she was unable to work because of her back and knee impairments, used a wheelchair (for which there is no prescription or documented need in the record), used a walker (also for which there is no supporting record evidence), and takes medicine that makes her sleepy. AR 53-54, 59. The ALJ asked Plaintiff about a November 2020 Function Report, which he ultimately discussed in his decision (AR 34), to which Plaintiff responded by stating she had deteriorated since then.

Plaintiff argues she used unprescribed assistive devices and the ALJ relied on progress notes that predate lumbar surgery by two months. ECF No. 9 at 10. But the ALJ discussed Plaintiff's back pain in detail, and considered this detail when forming the RFC and discounting Plaintiff's symptom testimony. AR 34. Plaintiff says the ALJ relied on duplicative exhibits. ECF No. 9 at 10 (*comparing* AR 1120, 1127 *with* 1459, 1466). However, while AR 1127 and 1466 are duplicates, AR 1120 and 1459 are not duplicative and these pages, along with AR 1120 and 1127, represent three unique treatment dates. Further, and more importantly, the ALJ relied on AR 397 (1F/24), 418 (3F/5), 329 (3F/16), 1219 (25F/7), and 1407 (29F/5) to conclude that "[p]hysical exams also showed normal muscle strength, tone, and sensation …."[2] AR 34. Thus, by comparing Plaintiff's testimony regarding her substantial limitations to the record evidence, together with reference to her November 2020 Function Report and activities of daily living (*id*.), the ALJ provided a clear and convincing comparison and cogent reasons for discounting the severity of symptoms Plaintiff averred. *Laib v. Astrue*, Case No. CV-09-0142-CI, 2010 WL 2218294 (E.D. Wash. May 26, 2010) (finding the ALJ's references to inconsistencies between the plaintiff's hearing testimony and medical records, as well as activities of daily living, as sufficient to reject Plaintiff's request for remand).

---

[2] These citations reference medical record dates July 17, 2019 through February 7, 2022. One citation by the ALJ is duplicative and, therefore, not cited above.

Plaintiff points to different portions of the record that, in essence, is a request that the Court "reweigh the evidence" in order to reverse the ALJ's finding. *Morris v. Colvin*, Case No. 2:13-cv-01904-GMN-VCF, 2014 WL 4977338, at *2 (D. Nev. Oct. 6, 2014). This is not the role of the Court; rather, the Court's role is "to determine whether the ALJ's findings were supported by substantial evidence and based on the proper legal standard. *Smolen [v. Chater]*, 80 F.3d [1273,] 1279 (9th Cir. 1996); *see also Burch*, *supra*, 400 F.3d at 679 ('Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.')." *Id*. The Court rejects Plaintiff's request to reweigh evidence and finds the ALJ fulfilled his obligation when assessing Plaintiff's testimony.

### III.  ORDER

IT IS HEREBY ORDERED that Plaintiff's Brief, seeking reversal and remand (ECF No. 9) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court shall close this case and enter judgment accordingly.

Dated this 24th day of September, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE